[No. 7122.] .

## LONDONER V. CITY AND COUNTY OF DENVER, ET AL.

1.  .MUNICIPAL CORPORATIONS—*Legislative Power Over*—It is elementary that the legislative power over municipal corporations, except as limited by the federal and state constitutions, is plenary—(23).

2.  CONSTITUTIONAL LAW—*Eminent Domain—Public Parks*— The acquisition of land for a public park is a public purpose. A park is a special benefit to the locality where it is established, and its cost, to the extent of the benefit may be assessed against the property specifically benefited—23, 24).

3.  ——*Article XX*—Section 1 of article XX of the constitution is not an expression of the only power granted to the City of Denver. The article confers upon the people of that municipality every power before that possessed by the legislature in respect to the framing of a charter, including the power to acquire lands for parks and park-ways by the exercise of the power of eminent domain, and to assess the expense thereof upon the lands specially benefited. The charter has all the force of an act of the legislature with respect to municipal matters, including the erection of taxing districts for local improvements, and special assessments for the cost of such improvements—(24).

4.  CITY OF DENVER—*Construction of Charter*—Where it is proposed to establish a public park, take private lands therefor, and assess the cost of the improvement upon the properties benefited, the only constitutional right of the property holder is to be heard upon the apportionment of the tax. The right to a preliminary notice of the intention of the municipal authorities to acquire lands for a public park, and the right of the property owner to remonstrate against and defeat the proposed improvement, secured by sec. 327 of the charter, is purely statutory. It might have been dispensed with. Therefore it was competent for the people to designate in the charter a board or tribunal with sole and exclusive authority to determine whether such notice was given, and whether a remonstrance, such as provided for by the same section, was or was not filed, or was or was not subscribed by the required number of property owners—24-26).

And. the property owners will not be allowed, in advance of the passage of an ordinance, as contemplated by the section, an injunction to restrain the exercise of this power. *Denver v.*

Londoner, 33 Colo. 104, distinguished—(25-34).

The provisions of section 327, to this effect, necessarily imply that the power and duty to determine as to these matters is vested in the city council—(33-34).

Neither the rules adopted by the board of park commission-.ers, nor their proposed apportionment of the tax, nor their esti-mate of the area within the district, nor their findings as to ·what lands are assessable, are binding upon the council. That body has power to modify such rules, ascertain the area within ·the improvement district, compare it with the area. covered by .any protest or remonstrance, pass upon the authenticity of the .signatures which appear appended to such remonstrance, as well as the title to the lots described therein, and to do all other ·things necessary ·to effect a valid assessment—38, 39).

5. STATUTES—*Construction*—ᴵWhat is implied in· a statute is .as much a part thereof as what is expressed—(29).

6. ᴵWRIT OF ERROR—*Nature of the Writ*—A writ of error is a new suit, and not a mere continuance of the proceeding, the judgment in which is sought to be reviewed. Therefore, where in an action to restrain the passage of a municipal ordinance, ·which, upon its adoption becomes ·by statute conclusive as to cer-·tain facts upon which the rights of the party depend, a demur-rer to the complaint is sustained, and a writ of error is prose-·cuted to review this judgment, but no supersedeas applied for ·or awarded, and pending such writ of error the proposed ordi-nance is adopted, the supreme court has no power to nullify the ·corporate action. The ordinance is conclusive, and the writ of . error will be dismissed—(36).

7. ——*Discontinuance*—ᴵWhere pending a writ of error, an .event occurs, without fault of the party successful below, which ·of necessity renders any judgment which may· be pronounced in the court of review, ineffectual, the revisory proceeding will be . dismissed—(37).

The passage ·by a municipal council of an ordinance, the ·passage of which was sought to be enjoined, and which by stat-ute is made conclusive ·of the rights of the party, is· of this char-.acter. The municipal council, acting by legislative authority, ·and in the manner prescribed thereby, their action cannot be de-clared to be wrongful ·or improper—(37).

8. TAXATION—*Special Assessments*—In providing for a pub-ᴵlic improvement it is not essential that the property owner .should have a preliminary notice of what is proposed, or its es-

timated .cost, or the lands to be acquired, or those which are to be assessed; nor is it necessary that the electors of the municipality, or the property holders thereof, should be afforded opportunity to protest against or prohibit the improvement; and where all these things are provided for, a board or tribunal may be authorized, with final and absolute power to determine whether the essential preliminaries have been observed—(25, 26).

8. ——*Exemptions*—The exemption of property from taxation for general purposes does not exempt it from an assessment to meet the expense of a local improvement—(39, 40).

*Error to Denver District Court.*—HON. GREELEY W. WHITFORD, Judge.

Mr. O. N. HILTON and Mr. C. V. MEAD for plaintiff in error.

Mr. HENRY A. LINDSLEY, Mr. G. Q. RICHMOND and Mr. F. W. SANBORN for defendants in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

The city and county of Denver is a municipal corporation created by and under the provisions of article XX of the state constitution. March 29, 1904, it adopted a charter which divides its territory into four park districts, and places them under the control of a park commission composed of five commissioners. It authorizes the park commission, with the approval of the mayor, upon certain conditions hereinafter stated, to select and acquire by purchase or condemnation proceedings, in the name of the city and county, for the use of any such park district, lands therein, for parks and park-ways, to be paid for, either in whole or in part, by special assessments upon the real estate, except parks, park-ways and streets, comprising such district. Sections 92, 324, 325, 326, 327 and 328.

By section 327 of the charter the park commission, before acquiring any such real estate or issuing bonds for park purposes, is required to prepare a map of the district, and apportion the estimated cost of the proposed improvement on the assessable real estate situate therein, in proportion to the benefits accruing thereto in consequence of the establishment of such parks or park-ways in such district, in accordance with rules therefor adopted by the park commission, as to it may seem just and reasonable; and to give published notice for ten days "to the owners of the real estate to be assessed, of the proposed purchase or condemnation, with a description of the lands to be acquired, the estimated cost, the number of installments, and time in which the assessments will be payable, the rate of interest on unpaid installments, the rules adopted by the commission for apportioning the benefits, as aforesaid, and the time, not less than ninety days after the first publication, when the question of the proposed purchase or condemnation will be considered by the commission; that said map and all proceedings of the commission are on file and can be seen and examined by any person interested during business hours, within said period of ninety days, at the office of the secretary of said commission, and that all complaints and objections that may be made in writing by owners of any real estate to be assessed will be heard and determined by the commission before final action of the commission in the premises."

The section further provides, that "The commission shall, at the time specified, or thereafter, consider all such complaints and objections, and may modify or confirm their apportionments, and shall finally determine whether said lands shall be acquired for said purpose; but if, within the time above specified, a remonstrance

shall be filed with the secretary of said commission, subscribed by owners of twenty-five per cent. in area of the real estate which is to be assessed, then the proposed purchase or condemnation shall not be made, and the proceedings shall not be renewed for one year thereafter."

The section also provides, that "the finding of the council by ordinance that such notice was duly given, or that such remonstrance was or was not filed, or was or was not subscribed by the required number of owners aforesaid, shall be conclusive in every court or other tribunal."

Certain sections of the charter make it incumbent upon the park commission, when the cost of any park-site or park-way is definitely determined, to file with the city clerk a certified statement showing the cost of the improvements, the apportionment thereof upon each lot or tract of land to be assessed; and requires the clerk thereupon, by advertisement for ten days in some newspaper of general circulation published in the municipality, to notify the owners of the real estate to be assessed, that the improvements have been, or are about to be completed and accepted, specifying the whole cost of the improvements and the share apportioned to each lot or tract of land; and that any complaints or objections that may be made in writing by such owners and filed with the clerk within sixty days from the first publication of such notice, will be heard and determined by the proper municipal authorities at a time designated in the notice and before the passage by the city council of any ordinance assessing the cost of such improvements. Sections 298, 299, 300 and 328.

Under these provisions of the charter, proceedings were initiated to acquire lands for parks and park-ways, in that portion of the municipality known as the "East

Denver Park District." The park commission complied with section 327 and published the preliminary notice required thereby. Thereupon certain protests against the improvements from property owners within the district were filed, including one by plaintiff in error. The park commission, on the day designated in the notice therefor, heard and considered the protests and complaints filed, and found, among other things, that sufficient remonstrances had not been made and filed as provided by the charter, to defeat the park improvements proposed, and thereupon finally determined to acquire the lands described in the notice for the purposes designated. The park commission thereafter certified to the council of the municipality the protests and complaints aforesaid, and the proceedings and findings relating thereto for such action as might be incumbent upon the council to do and perform in the premises. Thereupon plaintiff in error, for himself and all others similarly situated, brought an action to restrain the city council from passing an ordinance, which it was alleged it was about to do, making findings that the notice to the property owners as required by section 327 of the charter, had been duly given; that remonstrances subscribed by the owners of twenty-five per cent. in area of the real estate proposed to be assessed for the cost of acquiring the designated lands for parks and park-ways, had not been filed with the secretary of the park commission within the time specified in the notice, or at all. Plaintiff also sought in the action to restrain all the defendants in error from proceeding further in the premises.

The complaint sets forth some of the provisions of the charter, the notice given by the park commission as provided by section 327, and charges that the rules therein adopted by the park commission, for apportion-

ing the benefits to the real estate within the district, and the apportionment made, under said rules, of the estimated cost of the proposed improvements, are inequitable and unjust; and that irregularities and inaccuracies exist in the notice given, and in connection with the giving of the same. Alleges the filing of protests and remonstrances by property owners sufficient, if rightly counted, to defeat the improvements; the wrongful permission by the park commission to property owners to withdraw therefrom, and the inclusion of certain alleged nonassessable lands within the district in determining the area of the real estate included in the protests to the area to be assessed for the improvements, and other irregularities in the proceedings of the park commission upon its determination of the matters raised by the notice, the protests, remonstrances and withdrawals filed thereunder; and that the city and county of Denver has no power to acquire lands for parks or park-ways by condemnation proceedings; or to acquire the same by purchase, except by a vote of the taxpaying electors first approving and ordering a bond issue therefor; and that the charter provisions apparently vesting such power in the municipality are in violation of the constitution.

A demurrer was interposed to the complaint, sustained by the court, and the cause dismissed. The plaintiff brings the case here on error, and seeks a reversal of the judgment. The important propositions presented, the only ones we deem necessary to consider, will be disposed of in the order we deem most convenient.

1.   Plaintiff's contention, as to the lack of power in the municipality to acquire lands for parks or parkways by condemnation proceedings; or by purchase, except upon a vote of the taxpaying electors therein approving and ordering a bond issue therefor, is based

upon the assumption that section 1 of article XX of the constitution measures the extent and limitation of the power of the city and county of Denver in acquiring lands for parks and park-ways.

We are of the opinion that the assumption is not well based. In *Denver v. Hallett,* 34 Colo. 393, 416, we expressly held, that the limited grant of power contained in section 1 of article XX of the constitution is not the only power possessed by the municipality. We therein, on pages 398 and 399, said:

"The statement contained in the first section was not intended to be an enumeration of powers conferred, but simply the expression of a few of the more prominent powers which municipal corporations are frequently granted. The purpose of the twentieth article was to grant home rule to Denver and the other municipalities of the state, and it was intended to enlarge the powers beyond those usually granted by the legislature; and so it was declared in the article that until the adoption of the new charter by the people that the charter as it then existed should be the charter of the municipality, and further that the people of Denver shall always have the exclusive power of making, altering, revising or amending their charter; and further that the charter, when adopted by the people, should be the organic law of the municipality and should supersede all other charters. It was intended to confer not only the powers specially mentioned, but to bestow upon the people of Denver every power possessed by the legislature in the making of a charter for Denver."

By that decision we determined that the powers enumerated in section 1 of article XX of the constitution do not constitute a limitation of the powers conferred on the municipality; and, moreover, the article conferred

upon such people "every power possessed by the legislature in the making of a charter for Denver." It is equally certain the article neither enumerates nor withholds the power to purchase land, or to exercise the right of eminent domain by the municipality in acquiring the same, for parks and park-ways, and the payment therefor by collections based upon assessments upon the lands specially benefited by the public improvement.

There being no constitutional limitation on the exercise of these powers by the municipality, it necessarily follows, that the people of the city and county of Denver, on whom was "conferred every power possessed by the legislature in the making of a charter for Denver," could therein grant or withhold such powers.

It is elementary that, except as limited by the federal or state constitution, the legislative authority over municipal corporations is supreme or plenary. It is "a legislative function to determine what power shall be granted, what withheld, and what restrictions shall be imposed in the exercise of the powers granted."—*Denver v. Hallett, supra,* Dillon on Munc. Corp., secs. 9, 44.

It is equally certain that "the right to appropriate private property to public uses lies dormant in the state, until legislative action is had, pointing out the occasions, the modes, conditions, and agencies for its appropriations. Private property can only be taken pursuant to law; but a legislative act declaring the necessity, being the customary mode in which that fact is determined, must be held for this purpose, 'the law of the land,' and no further finding or adjudication can be essential, unless the constitution of the state has expressly required it."—Cooley's Const. Lim., pp. 759, 760.

The acquisition of lands, for parks is unquestionably for a public purpose and is so conceded. Likewise, "It is

now the generally accepted rule that a public park is a special benefit to the locality or part of the city in which it is established; and its cost, to the extent of such special benefits, may be assessed against the property specially benefited. * * * The propriety of apportioning the tax according to the special benefits received is unquestionable."—Hamilton on the Law of Spec. Assess., sections 256, 257; Page & Jones on Tax. by Assess., sections 307, 356 and 357.

We, therefore, conclude that the people of the city and county of Denver, when making a charter for the municipality, had the power to write therein provisions for the purchase of lands, or for the exercise of the power of eminent domain in acquiring lands for parks and park-ways, and the payment therefor, in whole or in part, by collections arising from assessments made upon the property within the districts specially benefited by the improvements, and that the charter provisions in that respect are constitutional.

2.   The charter provisions authorize the board of park commissioners to initiate the public improvements in question, and to finally determine whether the lands, necessary therefor, shall be acquired, subject, however, to the will of the owners of a certain percentage in area of the real estate to be assessed for the cost thereof, to annul that authority by expressing their disapproval of the proposed improvements within a designated time. It, therefore, follows, that until the property owners have, by their non-action approved, or by their action disapproved the proposed improvements, the power to proceed lies in abeyance.

However, as the matters upon which the findings, here sought to be restrained, pertain to questions preliminary in their nature, they do not affect the constitu-

tional rights of any party in interest. They might have been dispensed with by the lawmaking power, and full authority vested in the park commission, or other city authorities, to acquire the lands and make the proposed improvement without any preliminary proceedings whatever. As said in *Londoner v. Denver,* 210 U. S., 373, 379; "The legislature might have authorized the making of improvements by the city council without any petition."

It is ordinarily a legislative function to create special taxing districts and to charge the cost of a local improvement therein, in whole or in part, on the property benefited in proportion to the benefits thereto. *Webster v. Fargo,* 181 U. S., 394. And the charter of the city and county of Denver, adopted in obedience to an express mandate of the constitution of the state, with respect to municipal. matters, including the creation of taxing districts for local improvements and special assessments for the cost of the latter, has all the force and effect of an act of the legislature. The east Denver park district was so created and the proposed improvement authorized. Under these circumstances, the only constitutional right possessed by the property owner, as to the making of the proposed improvement, is to a hearing upon the question of what is termed, the apportionment of the tax; i. e., the amount of the tax which he is to pay.—*Voigt v. Detroit,* 184 U. S., 115; *Goodrich v. Detroit, idem,* 432.

This constitutional right is fully protected by the notice which the charter, sections 299 and 328, "requires shall be given by the city clerk and the proceedings in accordance therewith, afford the owners full opportunity to be heard on the question of assessments against their property."—*Denver v. Dumars,* 33 Colo. 94, 101.

Therefore, since the right to a preliminary notice of the intention of the municipal authorities to acquire the lands necessary for, and to make the public improvement, and likewise the right of the property owners to stop the proposed improvement by remonstrances filed within a designated time, is purely statutory, and could have been dispensed with by the lawmaking power, authority existed in the latter to designate, in the charter adopted, the sole body or tribunal authorized to conclusively determine whether the required notice "was duly given, or that such a remonstrance was or was not filed, or was or was not subscribed by the required number of owners."—Page & Jones on Tax. by Assess., sections 779 and 811; *Olds v. Erie City,* 79 Pa. St. 380, 383.

It is well established that as to all statutory proceedings or acts essential to the validity of local improvements, excepting those that are necessary to constitute due process of law or to comply with other constitutional prerequisites, "the same power (legislative) which prescribes them is competent to declare that their nonobservance shall not be fatal to the validity of the tax and that no inquiry may be made concerning them."— *Chase v. Trout,* 146 Calif. 350, 359; In the matter of Kiernan, 62 N. Y. 457.

In *Scranton v. Jermyn,* 156 Pa. St. 107, 110, 111, the law under consideration authorized city councils by ordinance to direct the paving of streets, etc., but if the cost thereof was to be paid by the abutting property owners, certain conditions were attached to the manner of the exercise of the municipal authority, one of which was, that the paving, etc., shall be petitioned for by a majority of the owners, or the owners of the majority of the feet front on the street. A section of the same law provided, that where the paving had been petitioned for,

"the passage by councils of any ordinance directing the paving, * * * shall be held to be conclusive of the fact" that the necessary majority of owners have petitioned for it. It was said: "Under these provisions of the statute the only defense upon this point open to a property holder against a municipal claim for paving is that there was no petition. The affidavit of appellant does not set up any such defense. On the contrary it expressly avers that there was a petition, but it was not signed by a majority. That fact was not open to dispute. The argument of appellant on this branch of the case is really an argument against the policy of such a provision. With that we have nothing to do. The language of the act is perfectly plain and can have but one interpretation."

"The legislature, (in this instance the people of the municipality), has the authority, so long as constitutional rights are not invaded, to provide in special proceedings what questions may be tried by the courts, and what not." —*Denver v. Dumars, supra.*

To the same effect is Page and Jones on Taxation by Assessment, section 795. Analogous in principle, and announcing the like doctrine is *Denver v. Londoner,* 33 Colo. 104, which was carried to the supreme court of the United States, where, in *Londoner v. Denver, supra,* it is said: "The legislature might have authorized the making of improvements by the city council without any petition. If it chose to exact a petition as a security for wise and just action it could, * * * accompany that petition with a provision that the council, with or without notice, should determine finally whether it had been performed."

In the same opinion we find the following: "It is contended, however, that there was wanting an essential condition of the jurisdiction of the board, namely, such a petition from the owners as the law requires. The trial

court found this contention to be true. But, as has been seen, the charter gave the city council authority to determine conclusively that the improvements were duly ordered by the board after due notice and a proper petition. In the exercise of this authority the city council, in the ordinance directing the improvement to be made, adjudged, in effect, that a proper petition had been filed."

The rule stated in *Willcox v. Engebretsen, et al.*, a recent decision of the supreme court of California, 116 Pac. 750, 751, is as follows:

"Where a statute requires such a petition to be filed as a condition precedent to the making of such order, (for a public improvement), the board or council has no power to make the order until a sufficient petition has been filed. This is settled by the cases of *Turrill v. Grattan*, 52 Calif. 97; *Dyer v. Miller, supra,* (58 Calif. 585) ; *Mulligan v. Smith, supra,* (59 Calif. 206), and *Kahn v. Board, supra,* (79 Calif. 388, 396), and as to that point there is no dispute. But the necessity for such petition is the creature of the statute. It is not required by any constitutional guaranty. From this it follows that the statute may dispense with such requirement, or it may provide that the decision of the board or council as to its sufficiency, or any subsequent act depending upon it, such as the issuance of the bonds, shall be conclusive evidence of the fact that a sufficient petition has been filed. Such provisions will be upheld as valid," citing *Chase v. Trout, supra.*

3. Plaintiff however, contends, that the charter, though declaring the effect of the findings of the city council, does not make it the duty of that body to pass upon the matters of which complaint is made, and that, therefore, the council is not the tribunal designated to ascertain the facts involved. We are unable to ascribe such meaning to the charter provisions. The declaration

therein as to the effect the findings of the council by ordinance shall have, necessarily implies that the council is invested with the power to determine, and that the duty so to do rests upon that body. That which is implied in the statute is as much a part thereof as what is expressed therein.—*Paulsen v. Portland,* 149 U. S. 30, 39.

The rule is stated in 28 Cyc. 1023, as follows: "If the municipal authorities are empowered, *either expressly or by fair implication,* to determine whether the requisite number of property-owners have assented to an improvement, their action in ordering the improvement is a conclusive determination of that question; but where this duty is not conferred, the courts may inquire whether the requisite number have so assented."

In *Spaulding v. North San Francisco Homestead,* etc., 37 Calif. 40, 45, upon a matter involving a like question, the court said: "In exercising the jurisdiction thus obtained, and in granting the petition, the board of supervisors must necessarily have found that the petitioner was the owner of a majority of the frontage to be affected by the proposed improvement. Even if, as seemingly suggested by counsel for appellant, the act referred to does not provide, in express terms, for any determination of the matter of a petition, clearly, where a board is empowered to receive a petition, and is invested with discretion in regard to the subject-matter, it has the implied power to determine whether it shall be granted or not."

The charter provisions, by necessary implication, provide for two adjudications of the facts as to the sufficiency of the notice given and the remonstrances filed. One, a direct hearing before the board of park commissioners, upon written complaints and remonstrances after notice given. The other, in the nature of a review

of that hearing by the city council. Under the rule announced, the two tribunals are necessarily exclusive, and the latter is in specific terms made conclusive. It is with the board of park commissioners alone that the property owner may file a remonstrance, and it is before that tribunal that he may have a full and complete hearing. It is likewise the duty of that body to consider all complaints and objections of the property owners, and to "finally determine whether said land shall be acquired for said purpose." The general jurisdiction to make the public improvement is vested in the board of park commissioners. To exercise the power, certain conditions are imposed. One, that a notice be given; another, that a certain percentage of the property owners do not object to the proposed improvement. It is, therefore, clear, that whether in any particular instance the park commission has the power to proceed depends on facts which are to be ascertained before the determination to proceed. The power being vested in the park commission to finally determine whether they will acquire the lands for the proposed improvement, and it being with that body the property owners may file remonstrances, it necessarily follows that it is that tribunal which must, in the first instance, ascertain and settle, by its decision, the existence or non-existence of such facts. The case is clearly within the rule announced in Cyc., *supra*. It would seem that the action of the board of park commissioners, in finally determining "that said land shall be acquired for said purpose" would, if it were not for other provisions of the charter, be a conclusive determination that the property owners assented to the improvement. But, be that as it may, as the charter expressly declares that the finding of the council by ordinance as to such facts "shall be conclusive in every court or other tribunal," the duty

to determine, as well as the conclusive effect of the determination of the city council, is fixed beyond doubt.— Freeman on Judgments, sections 522, 523 and 524.

In section 531 of the last cited authority, it is said: "A large number of persons and of tribunals, not ordinarily spoken of as 'judges,' nor as 'courts,' are nevertheless authorized to investigate and determine certain questions. Their authority in this respect is judicial," and the legislative pronouncement measures the extent and effect of their acts.

The people of the municipality, having full and unrestricted power over the matters involved, vested in the city council the power to pass upon and make conclusive findings as to the existence or non-existence of certain things which might have been dispensed with entirely by the legislative power. Nor did such people see fit to provide any mode of review of the acts of that tribunal, but declared that its findings thereon "shall be conclusive in every court or other tribunal." We think the jurisdiction conferred upon the park commission, in the first instance, and in the city council finally, to pass upon and determine the existence or non-existence of the alleged jurisdictional facts, is absolute and exclusive.

"The rule is well settled that where a statute upon a particular subject, has provided a special tribunal for the determination of questions pertaining to that subject, the jurisdiction thus conferred is exclusive, unless otherwise expressed or clearly manifested."—*Hendreshke v. Harvard H. S. Dist.*, 35 Neb. 400, 401.

In *Dudley v. Mayhew*, 3 Coms. 9, the question was, as to the jurisdiction of the state courts to restrain the infringement of a patent right, and it was held, that when a person is confined to a statutory remedy on a statute right, the party must take it as conferred; that

where the enforcing tribunal is specified, the designation forms a part of the remedy and all others are excluded.

In *Reed v. Omnibus R. R. Co.*, 33 Calif. 212, 217, it is said: "When the statute creating the new right and prescribing the particular remedy for violation thereof, provides that the remedy must be pursued in a particular court, the rule we are considering excludes all other jurisdictions. The forum named in the statute is an element in the method of redress, and that method is at once integral to the remedy and to the right."

In *Armstrong, et al., v. Mayer, et al.*, 60 Neb. 423, it is held, quoting from the syllabus: "Where a right is given by statute and a specific remedy is provided, designating the tribunal for the enforcement thereof, the jurisdiction of such tribunal is exclusive, unless the law otherwise provides."

Applying the rule as stated: We have here a statute, the charter, upon a particular subject, the acquiring of lands for, and the making of certain kind of public improvements. That charter has provided special tribunals, to-wit: the board of park commissioners, in the first instance, and in the way of review, the city council, for the determination of questions pertaining to that subject. The jurisdiction thus conferred is exclusive for it is not "otherwise expressed or clearly manifested." The same principle is announced and applied in *Spaulding v. North San Francisco Homestead etc., supra,* wherein and to the particular point, *Jennings v. Le Breton*, 80 Calif. 9, is cited.

Moreover, if the jurisdiction conferred upon the board of park commissioners and the city council be not exclusive, as well as conclusive, an anomalous condition of things might arise. Suppose proceedings were instituted to acquire by condemnation, a particular lot, and

therein the defendant pleaded, and the court found, that
a sufficient remonstrance, to defeat the proposed improve-
ment, had been filed with the board of park commission-
ers.   It would necessarily follow that the condemnation
suit would be dismissed.   Then suppose that in other
condemnation suits, seeking to acquire lands for the same
improvement, no such defense were interposed, or sup-
pose that other lands for the improvement were acquired
by purchase, and subsequently, after the improvement
was fully completed, or before, the city council should
find that the alleged remonstrances were insufficient. The
legislative authority declared that the finding of the coun-
cil should be conclusive "in every court or other tribunal,"
whereas the court, in the supposed case, made that por-
tion of the law a nullity.

While it may be true, as plaintiff contends, that the
finding by the council upon the matters involved is not
a necessary act to the validity of the proceedings, we
think it quite probable that until such finding, condemna-
tion and other proceedings of the park commission, for
the acquirement of lands for the purposes proposed,
could be stayed.   It will be observed that the charter,
section 327, containing the conditions upon which the
board of park commissioners may act, likewise embodies
therein the clause relative to the conclusive nature of the
findings of the council as to the notice, remonstrance and
other preliminary proceedings, whereas it is, in another
section of the charter, and after completion of the work,
or, at least, ascertainment of the full cost thereof, and
after another report to the council, from the board of
park commissioners, covering all such matters, that the
council is authorized to make the final assessment.   From
this it would seem that the charter intended that all
matters, not going to the constitutional rights of the par-

ties interested, should be finally determined before the work shall in fact be commenced. Such a requirement would be reasonable and wise. The question, as to whether the required percentage of property owners, to defeat the proposed improvement, have subscribed a remonstrance, is necessarily one of fact not always easy of ascertainment. Property lines may be uncertain or undetermined, titles may be in dispute, corporations may assume to sign without authority from their respective boards of directors, lots may be in course of transfer, and the owner today, when one petitioner signs, may not be the owner tomorrow when the petition is presented.

4.   Plaintiff concedes, and we have frequently held, that should a property owner defer action until the city council has, by ordinance, determined the matters committed to it, such findings are conclusive, and the property owner is precluded from questioning the same. He, however, insists that upon principle we have held, that prior to such finding by the city council, any person whose property is to be assessed for the cost of the improvement, may invoke the powers of a court of equity to inquire into the existence or non-existence of such facts.

The contention is based upon certain language in *Denver v. Londoner, supra,* to the effect, that where a city charter authorizes the board of public works to order the grading, curbing and paving of streets, provided the owners of a majority of the frontage of the lots to be assessed for the cost thereof, shall petition therefor; and authorizes the city council to create a local improvement district and apportion and finally assess the cost of the improvement against the property benefited, the presentation to the board of public works of the petition designated, is jurisdictional, and until the city council determines, as provided by ordinance, that the necessary peti-

tion subscribed by such owners has been presented to the board of public works, the latter could be enjoined from presenting any recommendation to the city council.

A consideration of that case shows, that the question under discussion, in which the language was used, was not necessary to a decision of the controversy. The point was not involved in the case. Moreover, in that opinion there is no holding, expression or intimation that the city council could be enjoined from acting in the premises, and especially after it had assumed jurisdiction of the matters involved. On the contrary, the holding to which that language applies, is confined to the right to enjoin the board of public works from making any recommendation to the council. In that case the board of public works had ordered the improvement, had prepared specifications therefor, reported its acts in that respect to the city council, and the latter body had determined that certain preliminary steps, which the law required to be taken by the board of public works, had been performed, and thereupon, before the injunction suit was brought, created the improvement district. In the case at bar the charter itself created the improvement district, the board of park commissioners initiated the improvements proposed, assumed to comply with all the provisions of the charter, and finally determined to make the improvements, and made report of its acts in that respect to the city council before the injunction suit was filed. Thus the board of park commissioners had already done the very thing which in that case it is said the board of public works might be enjoined from doing, to-wit: made its report to the city council. Moreover, the latter body had assumed jurisdiction of the matter and were about to do the very thing the charter authorized them to do.

However, were we to assume, that prior to the conclusive findings, which the city council are authorized to make, any person, whose property is to be assessed for the cost of the improvement, may invoke the powers of a court of equity to inquire into the existence or nonexistence of such facts, it would be of no avail to plaintiff.  Since the filing of this suit, which is a writ of error, and, therefore, a new suit, an event has transpired that is conclusive upon us of all the facts involved.  The facts of that event have been brought to our attention by a plea in bar.  After the injunction, sought to be obtained, had been denied by the court below, the case dismissed, and the writ of error from this court sued out to review the judgment of the lower court, the city council duly made the findings, and passed the ordinance sought to be restrained.  The mayor approved the same, and it was duly published.  No application was made to this court for a restraining order, or stay of any kind, and none was issued against the council or the defendants herein pending the determination of the writ of error.  The city council, in the exercise of the power vested in it by the charter, and unrestrained by any authority, duly enacted an ordinance, declaring the existence of the essential facts.  This ordinance has the effect of a statute; and the mandate of the people of the municipality, expressed through their charter, is, that such findings shall be conclusive upon every court or other tribunal.  The city council, possessing the power to make such findings, assumed jurisdiction, before that of this court, or the court below, was sought to be invoked.  Under these circumstances, we certainly do not have the power to nullify the legislative mandate, that the finding of the council shall be conclusive upon every court or other tribunal, and declare that it is not conclusive upon us.

Moreover, a reversal now would accomplish nothing, for that which was sought to be restrained has been done. The rule is, that where pending a review of the action of a lower court, an event occurs without fault of the successful party below, which of necessity renders any judgment that may be pronounced ineffectual, the proceedings on review will be dismissed. Plaintiff concedes the rule, but argues that matters that arise solely through the action of the successful party below, must necessarily arise and be brought about through his fault. We do not think so. As we understand the words in the sense in which they are used, they imply some wrongful or illegal act which constitutes the fault. *Bull, et al. v. Doss Bros. Const. Co.*, decided at this term. In the case at bar the city council did nothing, except that which the legislature authorized it to do, and in the manner prescribed thereby.

5. Assuming, but not deciding, that in this character of suit we can inquire into the matter of fraud, one question remains which we will consider. The plaintiff contends, that the action of the board of park commissioners to acquire the lands and make the public improvement, was based upon fraud, and should be set aside, and the council restrained from passing upon the matter, because of the alleged fraudulent acts of the park commission.

The complaint in no wise charges fraud against the city council, or that that body has been, or will be wrongfully influenced, or that it will proceed in any manner other than the law requires. The allegations of wrongdoing apply solely to the acts of the board of park commissioners. Moreover, the alleged wrongdoing upon the part of that tribunal, does not, as will presently be seen, constitute fraud, or even bad faith, but mounts no higher than an allegation of an honest mistake in judgment.

The allegations are, in substance, that the rules which the park commission adopted for apportioning the special benefits to the real estate, are unfair; that while the notice of intention to acquire the lands, stated that the total area liable for assessment for the improvement, was 65,720.41 lots of the dimensions of 25x125 feet, the park commission, for the purpose of fixing a basis for calculating the sufficiency of the remonstrances, made a revised computation of the area within the district so liable for assessment, and fixed and determined the area as equivalent to 72, 255.68 lots of the dimensions aforesaid; that the park commission, in order "to arrive at such result included in its calculation property within said district belonging to the United States of America, to the state of Colorado, to the city and county of Denver, school property and church property and cemetery property not liable for any assessment for such purposes and that can not legally be subjected to the payment thereof," stating the designated number of non-assessable lots so included, but without a description of the lots or segregation of ownership thereof. The notice given is set forth in the complaint, and the exact number of lots included within the district is not stated therein. On the contrary, after each subdivision of the improvement district, arranged as the proposed plan of assessment, a statement follows that it contains "*approximately*" a designated number of lots.

The charter does not require the enumeration in the preliminary notice of the lot area to be assessed, except as it may be, and in this case was, included in the rules adopted for the proposed apportionment of the cost of the improvement. Neither the rules adopted, nor the proposed apportionment by the board of park commissioners, or the latter's estimate of the area within the district, or

the inclusion or exclusion of alleged non-assessable lands, is binding upon the city council. That tribunal has the power to change or modify such rules; to ascertain the area within the improvement district; to compare it with the area covered by the protests; to consider and pass upon the validity of the signatures to remonstrances, the ownership of the lots, and all other matters essential to a valid assessment.

Moreover, the claim is not made that there is not within the park district an area equivalent to that claimed, but only that certain lands within the district alleged to be non-assessable, were included in ascertaining that area, and in determining the sufficiency or non-sufficiency of the remonstrances.

Under these circumstances, and in view of the fact that the charter expressly requires that the special assessments for the cost of the improvement shall be levied upon "the real estate, except parks, park-ways and streets, comprising such district," and the further fact of the uncertainty of the law as to what public property may, or may not, be assessed for the cost of the improvement under the charter, we can not say that the inclusion of such lots by the board of park commissioners was, if error at all, more than an honest mistake. It is very certain that public property, other than that owned by the United States, may be taxed or exempted for local improvements, at the discretion of the legislature, and this may extend to and include lands belonging to the state itself.—Page & Jones on Tax. by Assess., sections 579, 580, 581, 582, 583, 584 and 586.

The allegation, as to the inclusion of non-assessable property, covers not only lands belonging to the United States, to the state, to the city and county, but school, church and cemetery as well. The exemption of property

from general taxation does not exempt it from local assessments for public improvements.—*City of Beatrice v. Brethren Church of Beatrice,* 41 Neb. 358; *Sheehan v. Good Samaritan Hosp.,* 50 Mo. 155; *Roosevelt Hosp. v. Mayor, Aldermen, etc.,* 84 N. Y. 108.

We are fully persuaded that upon the record as here presented, a court of equity can grant no relief to plaintiff in error.

In the views herein expressed, Mr. JUSTICE GARRIGUES and Mr. JUSTICE BAILEY fully concur. Mr. JUSTICE HILL concurs therein as to the power of the city and county of Denver to acquire lands for parks and parkways by purchase or condemnation, as in the charter provided, and also that the plea in bar to the writ of error should be sustained. Mr. JUSTICE MUSSER and Mr. JUSTICE GABBERT likewise concur as to the power of the city and county of Denver to so acquire lands for parks and park-ways, but dissent as to all other matters. CHIEF JUSTICE CAMPBELL does not participate in the opinion.

The plea in bar is, accordingly, sustained, and the writ of error dismissed.                    *Writ dismissed.*

Decision *en banc.*

---

Mr. JUSTICE HILL specially concurring:

I concur in that portion of the opinion wherein it sustains the power of the city and county of Denver to acquire parks and park-ways and to make the necessary assessments therefor, conditional that the provisions of the charter are complied with in so doing. But I cannot agree with the conclusion that the charter has designated the city council as the exclusive body, at all times, to finally determine whether a proper remonstrance has been filed with the park board and that its right to pass upon that question, after the findings of the park board, is at

all times exclusive, as well as conclusive after having been made. The language of section 327 of the charter does not so state. It appears to me that to so hold is to read into the charter, by judicial legislation, a state of facts not placed there by its framers and never intended to be in there, by them or the people when they adopted it. This, it seems to me we cannot and ought not to do; we ought not to give it a construction not supported expressly or by necessary implication by the instrument itself. It is not incumbent upon us to amend the charter; that privilege belongs to the people.

In placing a construction upon an act (and especially so when it is silent upon matters which it is urged should be presumed or inferred) it is elementary that there should be taken into consideration the purposes and objects sought to be accomplished, the law as it existed prior to the adoption of the act, and the evils, inconveniences or uncertainties, if any theretofore existing, which it is sought to remedy. In considering the laws pertaining to this line of improvements prior to the adoption of this and other similar charters, we find, as a general rule, where the act provides that a petition shall be signed by a certain number in order to initiate the proceedings, or that a remonstrance signed by a certain number shall defeat further proceedings, that both have been held jurisdictional and that a taxpayer could raise the question concerning either at any time thereafter when his rights were involved.—*Zeigler v. Hopkins,* 117 U. S. 683; *Armstrong v. Ogden City,* 12 Utah, 476; *Mulligan v. Smith,* 59 Calif. 206; *Collins v. Township of Grand Rapids,* 108 Mich. 675; *Fruin Bambrick Construction Co. v. Geist,* 37 Mo. App. 509; *Knopfi v. Roofing & Paving Co.,* 92 Mo. App. 279; *Keifer v. Bridgeport,* 68 Conn. 401; *Miller v. City of Amsterdam,* 149 N. Y. App. 288.

Viewed in this light, when the charter is considered as a whole, it appears to me it was intended in order to have these matters conclusively set at rest, after the findings of the park board had been made, that the council could approve its actions and thus make a finding on these matters which, when made, should thereafter be conclusive. The object being if the council so desired that they could have those questions set at rest once for all and not leave them open to further attack. Many reasons exist why it is wise to do so. The purchaser of the bonds always desires to know that the question has been settled and is not thereafter open to attack; by having it settled, a better price can be secured for the bonds, and it is thus to the advantage of the district in disposing of them; contractors in making their arrangements and all others connected therewith want to know that these questions are settled. This will avoid such supposed proceedings as suggested where suits might be instituted to condemn property, etc., after the matter has been passed upon by the council; so that as I view it, this language was used to accomplish this result; the context so indicates. That portion of section 327 involved reads:

"The commission shall, at the time specified or thereafter, consider all such complaints and objections, and may modify or confirm their apportionments, and shall finally determine whether said lands shall be acquired for said purposes; but if, within the time above specified, a remonstrance shall be filed with the secretary of said commission, subscribed by the owners of twenty-five per cent. in area of the real estate which is to be assessed, then the proposed purchase or condemnation shall not be made, and the proceedings shall not be renewed for one year thereafter; and the finding of the council by ordinance that such notice was duly given, or that such remon-

strance was or was not filed, or was or was not subscribed by the required number of owners aforesaid, shall be conclusive in every court or other tribunal."

In my opinion, this portion referring to the council was intended more in the way of a statute of limitations, and means that after the findings of the park board have been confirmed and approved by the council and nothing has intervened, that the result of the findings of the council shall then be conclusive, rather than to assume that it was the intention to make the city council at all times the exclusive judge of these matters.

This position is further strengthened when we come to consider section 332 in this same article of the charter, (this entire article No. 11 pertains to public improvements). Section 332, as I read it, seeks to place a limitation within which actions shall be brought concerning certain matters, or proceedings had, done or performed under all other sections of this article. It reads in part as follows:

"No action or proceeding, at law or in equity, to review any acts or proceedings, or to question the validity or enjoin the performance of any act, or the issue or collection of any bonds, or the levy or collection of any assessments, authorized by this article, or for any other relief against any acts or proceedings done or had under this article * * * whether based upon irregularities or jurisdictional defects, shall be maintained, unless commenced within ninety days after the performance of the act or the passage of the resolution or ordinance complained of, or else be thereafter perpetually barred."

To my mind, it is just as consistent to argue that section 332 (when a suit is brought within the time therein named) makes nugatory the provisions of section 327 which says that the actions of the council are conclu-

sive, as it is to contend that section 327 nullifies the provisions of section 332. Neither position is tenable. The sections should be construed together, each as qualifying the other, and when so done the apparent conflict between them ceases to exist.

Many other reasons lead to the conclusion that it was never intended that the council should at all times be the exclusive body to pass upon this question. First, the charter does not state that the council shall pass upon it at all. Second, it does not state that it shall be the exclusive tribunal to enter into this question. Third, it makes no provision for any mode of procedure or the manner as to when, or how it shall determine these facts. Fourth, it does not provide that the park board shall transmit to the council the remonstrances or any other papers in connection therewith, or any data upon which the council may act. And fifth, it makes no arrangement for notice, or protest or for a hearing in any manner before the council by the taxpayers. True, it is stated that the charter could have provided that these improvements could be ordered by the park board without any of these preliminary matters; all could have been dispensed with. Authorities are cited so holding, but I cannot see where they are applicable. The question here is not what could have been done, but what was done in the adoption of this charter, and I cannot lead myself to believe that the citizens of the city of Denver ever adopted or intended to adopt a charter wherein it provided that a remonstrance signed by twenty-five per cent. of the taxpayers should defeat the improvement, wisely I think as a check or safeguard upon that question, and then provide that the actions of a park board should become final pertaining to that important question upon its approval by the council, without any right of protest, hearing or trial, or data,

being presented to the council, upon which it is to act.

The actions or non-actions of the taxpayers are made a part of these proceedings covering public improvements, and when complied with are entitled to the same force and effect as that of the park board; no discretion is vested in its members if the necessary remonstrance is filed.

This provision providing for a remonstrance being for the protection of the taxpayers must be strictly followed. —*Hopkins v. Mason,* 42 Howard's Practice 115; *Merritt v. Portchester,* 71 N. Y. App. 309; *Michigan Cent. R. Co. v. Huehn,* 59 Fed. 335.

It is said that inasmuch as the charter makes no provisions for a hearing before the council the taxpayer is entitled to none. That is true, but to my mind that is one of the strongest points why it was intended that the taxpayer should have the right, prior to the time the council pass upon it, to have it passed upon in the courts, and if he was correct in his contention that the remonstrance had been filed by the proper number for that reason he could prevent the park board from further acting, as the charter states, thereby leaving nothing for the council to pass upon, just the same as if nothing had been certified to them at all.

The conclusion stated in the opinion for all practical purposes makes the findings of the park board conclusive, but I cannot believe that it was the intention of the framers of this charter to clothe the park board with this high governmental prerogative thereby placing the right to issue bonds for millions of dollars in their hands and in a manner so that the property owner who acts in time, regardless of that fact, is forever and in every forum shut out from the right of contesting the regularity of such proceedings, or that such a charter would have ever been

adopted, if it was understood that the question of whether
the check or safeguard provided for by a twenty-five per
cent. protest had been filed, could not be judicially ascer-
tained if steps were taken in apt time to have the result
so determined, and especially so where facts of fraud are
alleged against the park board and I have been unable to
find any case (concerning any charter similar to this) so
holding, where the action was brought to set aside these
proceedings prior to the findings by the council.

The cases relied upon to sustain the contrary view,
as I read them, were all instituted long after the passage
of the ordinance by the council, and were for the purpose
usually to restrain the collection of the tax, or to chal-
lenge its validity as a lien against the property, or as con-
veying title through tax sales thereon, etc., in which cases
it was properly held, I think, that they were precluded
from at that time raising the question.   This court has so
held, but in the case of city of *Denver v. Londoner,* 33
Colo. 104, we expressed the views, in substance, when the
act did not exist essential to give a public board jurisdic-
tion, that no doubt in such cases up to the time when the
city council acts upon its recommendation as to the crea-
tion of a paving district, and determines that the neces-
sary petition subscribed by the owners has been presented
to the board, that it could be enjoined from presenting
any recommendation to the city council, but that there
was a stage in the proceedings when the question of the
sufficiency of the petition and the number of owners sub-
scribing it is no longer open, and while it may be true, as
stated, that this statement was unnecessary in the deter-
mination of that case, it appears to have had the sanction
of the entire membership of this court as then constituted,
and, in my opinion, is not only sound, but is applicable
to the facts under consideration, and especially so where,

as I view it, in this action charges of fraud are alleged pertaining to the action of the board of park commissioners.

This statement in the Londoner case, *supra,* does not stand alone upon this question. In the case of *Mansfield v. City of Lockport et al.,* 52 N. Y. Sup. 571, where the Lockport city charter section 203 provided that the determination of the city council whether or not a petition for a street improvement is signed by the number of persons required by the charter as a condition to authorize the same shall be final and conclusive. It was held that the council's determination that the required number had signed, if made in good faith, could not, after an improvement had been made and paid for by the city, be attacked collaterally in a suit in equity to vacate the assessment. But in that case it was further stated that such a determination could be reviewed in a direct proceeding where any error or mistake could be corrected, the determination reversed, and the council placed at liberty to proceed anew. It was further said that even the action of the city council in ordering the assessment for a street improvement may be annulled by a suit in equity for fraud on the part of its members. It will be noted that the section of the Lockport charter is quite similar to that of the city of Denver. The part pertinent reads as follows:

"The decision of the common council as to whether any petition or petitions for a local improvement is or are signed by persons owning at least one-third of the frontage of the lands to be assessed for such improvement shall be final and conclusive, and not subject to question or appeal, but it shall not base its action on signatures on more than one petition if such petitions ask for different improvements; said decision shall be by resolution wherein the vote shall be taken by yeas and nays, and

entered in the minutes, and it shall require an affirmative vote of two-thirds of the aldermen in office to make such decision, or to pass any ordinance for a local improvement, except as herein otherwise provided."

In addition to the foregoing I think that the language used in some of the cases relied upon to sustain the contrary view is directly in harmony with the views herein expressed. The case of *Scranton v. Jermyn*, 156 Pa. St. 107, was an action to resist the payment of the tax brought after the improvement had been made. The ordinance there provided that the paving, etc., shall be petitioned for by a majority of the owners; by another section it provided that where the paving had been petitioned for the passage by council of any ordinance directing the pavement shall be held to be conclusive of the fact that the necessary majority of owners had petitioned for it. It was held that under these provisions where an owner let all this go by, that the only defense thereafter left open to him against a municipal claim for paving is, that there was no petition and that as he averred that there was a petition but it was not signed by a majority; that fact was not open to dispute. But we find nothing in that case which would lead one to believe that had the taxpayer made a sufficient attack upon that question prior to the findings by the council, it would not have received proper consideration. The court, in passing upon the question used the following language, "The legislature, wisely as it seems to us, has provided that the council shall determine this fact finally before the work is begun and the passage of the ordinance shall close the question for all parties." I think that was the object sought to be accomplished here, that it was intended if the taxpayer let this time go by and allowed the council to determine the fact it should close the question for all parties and

when section 327 is considered and construed in connec-
tion with section 332, it was intended that suits could be
brought questioning the correctness of the findings of the
park board, and especially so in a case where fraud is
alleged in the making of such findings, and that the city
council could properly and justly be restrained from pro-
ceeding or making any findings concerning the question
until the court had passed upon the actions of the park
board in this respect, and in case the court found differ-
ently, it could compel them to withdraw from the city
council and have returned to them any matters which had
theretofore been certified, and thus leave the council
without anything to pass upon the same as though the
park board had decided that a sufficient remonstrance had
been filed and for that reason they would do nothing far-
ther as the charter provides. I am of opinion that the
demurrer should have been overruled and the defendants
have been required to answer concerning the sufficiency
of the remonstrance.

I concur in the conclusion that the writ of error
should be dismissed for the reason that the plea in bar
precludes the plaintiffs in error from having any further
consideration of this matter. As stated, the original suit
was dismissed in the trial court. Thereafter, a writ of
error was sued out of this court to review the judgment.
This was the institution of a new suit. No application
was made to this court for a restraining order or stay of
any kind against the council or the other defendants
herein in order to prevent further action by them pending
the determination of the writ of error. No fraud is
alleged against the city council; it thereafter, in due sea-
son, proceeded to pass upon the question of whether a
remonstrance in the proper number and form had been
filed with the park board and thereafter, by ordinance,

duly enacted, found and declared to the contrary, and also to the effect that all essential facts necessary for the park board to continue in this matter had been complied with. Under this state of facts, I am of opinion that this precludes any further attack upon these questions. Were the rule otherwise it might work serious injuries, greatly retard, and in some cases practically prohibit, public improvements, as the result would be that dissatisfied taxpayers could file their suits asking for injunctions, allow them to lie dormant and in case the park board and city council did not make findings in harmony with their views, to thereafter press the matter in the courts in order to secure a decision to the contrary and thereby have the benefit of an adjudication by two tribunals instead of one.

According to my views the duty of the plaintiffs was to have had the council temporarily restrained from acting at all, until the action of the park board was passed upon by the court, and, if in their favor, the council, by further action of the court, could have been prevented from passing upon the question at all. To hold that they are entitled to this relief without having this done or attempting to have it done by this court. Would be to entirely ignore the provisions of the charter; it would also make the proceedings involving public improvements uncertain for an unreasonable length of time. A party has three years after the decision of the trial court, within which to sue out a writ of error, and in a case of this kind where the council had not been restrained from acting at all, the result might be that at any time during this three years a writ of error would be sued out; it might take a year or more to have the case disposed of in this court; if the result of the action was in favor of the taxpayer, it would then revert back to and cover the matters acted upon by the park board as well as the find-

ings of the council thereon. The result would be, during
this entire period, to make uncertain the validity of the
proceedings pertaining to any public improvement. I can-
not believe that this was contemplated by the framers of
the charter, and for that reason I agree the council hav-
ing acted at a time when there was nothing to prevent
them from acting, that their actions, as stated in the
charter, thereafter are conclusive upon all courts and are
not subject to further attack. Otherwise, any taxpayer
who felt aggrieved at the ruling of the park board could,
by suit, even if unsuccessful in the lower court, have the
matter placed in uncertainty for a long period of time by
suing out a writ of error any time during the three years.
If such were the law this might be done repeatedly; as
common experience in such affairs leads to the conclusion
that there are scarcely ever any public improvements of
any magnitude promulgated and carried into effect with-
out dissatisfaction and opposition from some number of
taxpayers whose properties are to be affected.

GABBERT, J., dissenting.

I cannot agree with the conclusion in the opinion by
Mr. JUSTICE WHITE, to the effect that the trial court was
without jurisdiction to inquire into the averments of the
complaint that, as a matter of fact, a remonstrance against
the proposed improvement was filed with the park com-
mission by the owners of twenty-five per cent. in area of
the real estate in the district.

At the outset, it should be borne in mind that the case
is essentially different from the Dumars and Londoner
cases, in that in those cases the preliminary steps which
the city council by ordinance had determined had been
complied with were attempted to be questioned in actions
to annul assessments, while in the case at bar the action

of the park commission, in finding that the required remonstrance was not filed is challenged at the very first opportunity which those remonstrating could take advantage of. The main purpose in providing that a finding by a designated municipal authority, that certain preliminary steps necessary to initiate proceedings to construct municipal improvements should be conclusive upon the courts, was to prevent the validity of such proceedings being attacked, upon the ground that such steps had not been taken, after the improvements had been ordered and completed; but it by no means follows that these preliminary steps which are intended to afford property owners protection and insure wise and just action on the part of the municipal authorities are meaningless and can be entirely ignored if the failure to observe them is raised in apt time.

It is true, that the provision in the charter permitting a remonstrance to be filed could have been dispensed with and the constitutional rights of property owners would not have been invaded, but as the charter has made such provision, the rights thus given must be protected. It is unnecessary to cite authorities to support the assertion that if the required remonstrance was filed it was the express duty of the park commission to proceed no further, and that such remonstrance *proprio vigore* ousted the commission of all authority in the premises, except to drop the proceedings, since the charter provisions on the subject, in effect, so declare. Having assumed a jurisdiction which, according to the allegations of the complaint, they do not possess, can a court of equity grant relief?

With the provisions in the charter under consideration, is it not clear that if they have not been observed, there must be a remedy and a tribunal where relief from

a failure to observe them can be obtained, provided, of course, that parties aggrieved by their non-observance move in apt time?

In the opinion of Mr. JUSTICE WHITE it is held that a court of equity cannot grant relief in such circumstances for the reason that by the charter the city council is made the exclusive tribunal to determine whether or not the required remonstrance was filed and that its finding on this question is conclusive upon the courts. If the charter is susceptible of the construction that the city council is made the exclusive tribunal for this purpose, then it must be conceded that the holding to the effect that the courts cannot be resorted to by aggrieved parties is undoubtedly correct; but I cannot give the charter the construction which leads to this result. The charter does provide for notice to property owners by the commission, and that all complaints and objections made in writing and filed within a specified time touching apportionments on the property to be assessed will be heard and determined by that body before final action in the premises. If the requisite remonstrances have been filed, the proceedings shall be dropped. If not, the commission shall modify or confirm the apportionment and shall then determine whether the land for the proposed improvement shall be acquired. It is true that as remonstrances are to be filed with the commission, the latter passes upon them in the first instance, but that judgment is in no sense final, as the city council appears to be vested with some functions and authority in the premises.

What steps shall next be taken by the commission if it determines to proceed with the improvement do not appear to be designated; at least, no provision on that subject has been cited. It appears to be conceded that a recommendation is then made to the council by the com-

mission, and that the council may pass an ordinance, which completes the preliminary steps, or at least an ordinance finding that the notice required to be given was duly given, and that the required remonstrance was not filed. Authority for this action is found in the latter part of the section defining the duties of the commission with respect to complaints, objections and remonstrances, and reads as follows:

"And the finding of the council by ordinance that such notice was duly given, or that such remonstrance was or was not filed, or was or was not subscribed by the required number of owners aforesaid, shall be conclusive in every court or other tribunal."

It is upon this provision that Mr. JUSTICE WHITE bases the conclusion that the council is the exclusive tribunal to pass upon the facts there mentioned after the commission has passed upon them. If that was the object, would there not have been provisions requiring notice to parties filing remonstrances with the commission, or provision made, if dissatisfied with the action of that body on remonstrances, to appeal to the council, and in apt terms an opportunity been afforded them to appear before the council and be heard? In brief, would there not have been provisions clothing it with the dignity and attributes of a tribunal to hear those who had filed remonstrances with the commission before passing judgment? None exist. In my opinion, this provision was intended to set at rest the facts therein specified, when parties, after the action of the commission, had not taken steps to annul its action before final action by the municipal authorities in the way of ordering and completing the improvements. Otherwise, provision would have been made for a hearing before the council of those claiming to have been aggrieved by the action of the commission, if it had been

the purpose to make it the exclusive tribunal for the determination of these questions when raised by persons dissatisfied with the judgment of the commission. So the conclusion is inevitable, that if the park commission acts without jurisdiction, the only remedy is for the aggrieved parties to resort to the courts. Certainly, the latter should not refuse to assume jurisdiction and give relief if those whose rights have been infringed by the action of the commission act in apt time.

In the *Londoner case,* and in *City of Denver v. Campbell,* 33 Colo. 162, and *City of Denver v. Spalding, ibid,* 172, it was said, in substance, that the provision permitting the council to make *ex parte* findings to the effect that preliminary steps necessary to follow in initiating public improvements, or where certain steps had been taken by the board of public works which the law did not justify, were intended to prevent parties who had the required notice of the proposed improvements from remaining silent, and then, although their property was benefited, defeat the levy of an assessment because of such irregularities, and that if they intended to take advantage of such conditions, they must do so in apt time. In these cases it is intimated that if they did, they would be heard. Perhaps this statement was *obiter dictum,* but from the facts alleged in the complaint in the case at bar, it appears to be necessary to so hold, otherwise the provisions of the charter which the park commission are required to observe are rendered a nullity, and aggrieved parties are deprived of all opportunity to be heard on questions touching the regularity and validity of the action of the commission after that body has passed upon them.

Without a forum having been designated by the charter, where parties dissatisfied with the action of the

park commission can be heard, the action of the latter not being final, it must necessarily follow that such parties, where the jurisdiction and judgment of the commission is challenged, may resort to the courts if they do so before the proceedings by action of the municipal authorities are conclusive upon them. The writer can not take any other view, and be consistent with what was said in the public improvement cases above referred to.

Neither do I agree with the conclusion of the majority, that the plea in bar should be sustained. It should be borne in mind that the action of the council upon which this plea is based was taken after the case was brought here for review on error. This fact presents an entirely different case from one where the council might have acted after judgment of the lower court and before the case was brought here for review. The suit below was to annul the action of the park commission in overruling the remonstrances. There is no question but that the council had notice of the proceedings here, the purpose of which was to review the judgment of the lower court. With this notice, it acted at its peril in assuming to act upon the judgment of the commission which might be declared a nullity, the very purpose of the action instituted below. In such circumstances the action of the council which is made the basis of the plea was wrongful. I cannot subscribe to the doctrine that when an action is brought the purpose of which is to restrain a defendant from committing a specified act, that with notice of the pendency of such an action, he can commit the act sought to be restrained, and then plead that because of such action, there is nothing for the court to pass upon.

But there is an additional and more potent reason why the plea in bar should not be sustained. It is true the charter provides that the finding of the council, that

the required notice was given and the required remon-
strance was not filed, shall be conclusive upon the courts;
but the reason for this provision, as previously suggested,
was to prevent the validity of proceedings to construct
public improvements being attacked after the expense of
the improvement had been incurred, upon the ground that
the requisite preliminary steps had not been taken. When,
however, the reason for the enforcement of the charter
provision under consideration does not exist, it is not
applicable.  In the case at bar the owners have acted
promptly, before rights have attached, so that, in my
opinion, in the circumstances of this case, even the action
of the city council in making the finding upon which the
plea in bar is predicated, is open to question in the courts.
If this is not the rule which should be applied to the facts
before us, then the provisions of the charter which are
intended to give property owners a voice in the construc-
tion of public improvements are rendered absolutely nuga-
tory, for the very obvious reason that the park commis-
sion could arbitrarily overrule remonstrances, and imme-
diately, and before an action could be instituted by own-
ers remonstrating, the council could act, and owners
would thus be deprived of the right to have the charter
provisions enforced which are intended to afford them
protection against the action of the municipal authorities
in making public improvements.

In my opinion, the plea in bar should be overruled,
and the judgment of the district court reversed and the
cause remanded with directions to overrule the demurrer,
for the reason that a remonstrance by the owners of
twenty-five per cent. in area of real estate in the district
which the complaint charges was filed, by the very terms
of the charter compelled the commission to drop the pro-
ceedings.  Should the city authorities take issue on this

question of fact, it should be determined by the court. If determined in favor of those remonstrating the action of the commission and council should be annulled. The prime object of permitting a remonstrance to be filed was to give those whose property would be affected by a proposed public improvement an opportunity to express their disapproval of the action of the commission in taking the preliminary steps to make it. If the requisite remonstrance is filed and those remonstrating seek in apt time to review the action overruling it, as in the case at bar, the courts are open to hear their grievances. Sustaining the plea in bar, in the circumstances of this case, erroneously deprives those who filed remonstrances of this right.

In brief, on the facts presented, my views are, that, in as much as the charter provides (section 327) that the park commission, before acquiring real estate for park purposes, shall give notice by publication to the owners of the real estate to be assessed for the expense thus incurred, of specified matters which notice shall infori such owners that, not less than ninety days after its first publication, the question of the proposed purchase or condemnation of the land to be used for the proposed park will be considered by the commission, and that all complaints and objections that may be made in writing by owners of real estate to be assessed for such proposed park will be heard and determined by the commission before final action, and further provides that "if, within the time above specified, a remonstrance shall be filed with the secretary of said commission, subscribed by the owners of twenty-five per cent. in area of the real estate which is to be assessed, then the proposed purchase or condemnation shall not be made, and the proceedings shall not be renewed for one year thereafter," that, if the requisite

remonstrance is filed within the time specified, which the complaint in this case alleges was the fact, then the action of the commission in overruling such remonstrance, or the finding of the council to the effect that the requisite remonstrance was not filed, may be determined in the courts in an action instituted by any one or more of those remonstrating if commenced before the expense for the proposed park is incurred. In such circumstances, if the court should find that the requisite remonstrance was filed, the proceedings should be annulled.

I am authorized to state that Mr. Justice Musser concurs in this opinion.